134

[Crim. No. 178. Fourth Appellate District.—March 5, 1935.]

THE PEOPLE, Respondent, v. WILLIAM MAHER, Appellant.

Tom Okawara for Appellant.

U. S. Webb, Attorney-General, and Paul D. McCormick, Deputy Attorney-General, for Respondent.

BARNARD, P. J.—The appellant was convicted of murder in the second degree and has appealed from the judgment and from an order denying his motion for a new trial.

It is conceded that he shot and killed one Robert Daugherty in the town of Mendota early in the morning of March 2, 1934. No claim is made that the evidence is not sufficient to sustain a conviction of murder in the second degree and practically the only contention here is that the

court erred in failing to give an instruction defining manslaughter, in not referring to manslaughter in another instruction, and in not including such a verdict in the possible forms for a verdict which were submitted to the jury. ■

It is well settled that such an issue need not be submitted to a jury when the evidence does not show any of the elements of manslaughter and when the facts are such as to warrant only a verdict of murder or one of acquittal. (*People* v. *Ferugia*, 95 Cal. App. 711 [273 Pac. 99]; *People* v. *La Vers*, 130 Cal. App. 708 [20 Pac. (2d) 967]; *People* v. *West*, 215 Cal. 87 [8 Pac. (2d) 463]; *People* v. *Johnson*, 219 Cal. 72 [25 Pac. (2d) 408]).

■ The appellant, a butcher, and the deceased, a barber, worked in adjoining shops in the town of Mendota. Late in the evening of March 1, 1934, the two entered a cafe and beer parlor and engaged in playing poker. About midnight a man known as "Red" entered the cafe and joined in the game. Shortly thereafter an argument arose between the deceased and Red, during which the deceased knocked Red to the floor and kicked him. The appellant remonstrated, remarking that he did not think much of a man who would kick another while he was down. A little later the men went outside where the fight between Red and the deceased was resumed, at which time the appellant urged Red, who was getting the worst of it, to whip the deceased. The fight soon broke up and the deceased went away while Red and the appellant returned to the vicinity of the cafe. About half an hour later the deceased appeared in his automobile across the street from the cafe and the appellant and Red went up to the car, one on each side. Almost immediately the deceased screamed and jumping from his car ran into the cafe with blood streaming from his head. He exclaimed, "They have hit me over the head with a wrench." At that time he had a wrench handle in his hand. Two customers in the cafe took the deceased to the kitchen and washed his injuries. At that time the deceased picked up a butcher knife and said, "I am going out and get the fellows." However, one of the customers took the knife from him and hid it. The deceased then proceeded to the porch of the cafe, where he fainted. He was taken back into the cafe and revived with wet towels and water. While this was going on the proprietor of the

cafe ran outside and told the appellant and Red that the deceased had a knife, which had been taken from him, and that they should go home and go to bed. They both told the proprietor that they would do this.

While the deceased was in the cafe, receiving first aid, the appellant and Red went to a service station, after which the appellant proceeded to the butcher shop where he was employed and remained there about five minutes. After the deceased had been revived he started to leave the cafe to go home, preceded by one of the customers there. As they reached the front door the appellant appeared with a gun in his hand, which he cocked as he approached the door. He then forced his way past the proprietor of the cafe and the customer, who were both on the outside at that time, and while so doing he stated, ''Where is the barber. Get out of the way I've got a rod I will shoot your guts out.'' As the appellant entered the cafe the deceased was standing back of the stove and near the kitchen. The deceased threw up his hands and said, ''Bill don't shoot. Put that gun up.'' At that time the deceased's hands were empty. The appellant fired four or five shots, three of which struck the deceased, killing him almost instantly. Shortly thereafter an officer arrived and the appellant gave him his gun and said: ''Here it is, Rip. I done it. . . . I guess it is a good thing, Rip, I ran out of ammunition or you and I would have had it out.'' He also said to the officer: ''I will be executed for this.'' Some time later he stated to his employer that after the affair near the automobile, across from the cafe, he went to his butcher shop and took three or four drinks of wine and that ''You know the rest.''

More than half an hour elapsed between the first disagreement between the appellant and the deceased and the episode at the automobile. Whatever occurred there, the deceased was injured and ran from the scene and into the building where he was given aid. A considerable time then elapsed during which the appellant went first to a service station and then to his shop where he drank several glasses of wine. He then went back to the cafe, cocked his gun as he approached, forced his way past two people and then deliberately shot the deceased who had thrown his hands in the air and asked him not to shoot. There is nothing in any of these facts to justify the submission of a question

of manslaughter to the jury, and the court properly refused to submit such an issue.

Some contention is made that another instruction, on the subject of malice, should not have been given. While the appellant concedes that it correctly stated the law, it is argued that it did not sufficiently aid the jury in determining the degree of the homicide in the event that they should find the same was committed without malice. While the other instructions are not referred to or set forth, the jury was fully and fairly instructed upon this as well as other matters and this contention is without merit.

The judgment and order appealed from are affirmed.

Marks, J., and Jennings, J., concurred.